## IN THE DISTRICT COURT OF THE UNITED STATES
## IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____          CV/CR_____

**BIZAV AIRCRAFT MANAGEMENT, LLC,**
a Florida Limited Liability Company
       *Plaintiff*
v.
**STEVEN MNUCHIN,**
       **in his official capacity as**
       **Secretary of the United States**
       **Department of the Treasury**
       **and;**
**The Department of the Treasury**
       **and;**
**The Office of Foreign Assets Control**
       **and;**
**ANDREA M. GACKI**
**in her official capacity as**
       **Director of the**
       **United States Department of the Treasury**
       **Office of Foreign Assets Control**
       *Defendants*

## COMPLAINT FOR
## WRIT OF MANDAMUS, INJUNCTIVE RELIEF, AND DECLARATORY
## RELIEF  (Claim of Unconstitutionality)

1. This is an action for a writ of mandamus, for Injunctive Relief, for the issuance of a

   Temporary Restraining Order, and for Declaratory relief.


2. Plaintiff, **BIZAV AIRCRAFT MANAGEMENT LLC,** (hereafter "BIZAV"), is a Florida

   limited liability corporation incorporated September 29, 2017 doing business in the Southern

   District of Florida.  Plaintiff "BIZAV" is the owner of a certain Aircraft identified as one (1)

   DASSAULT AVIATION, model Mystere Falcon 50, jet aircraft, bearing manufacturer's

   serial number 268, former US Federal Aviation Administration Registration Number

N133JA, now US Federal Aviation Administration Registration Number N268TS; together

with Three (3) Honeywell Engines Model TFE731 respectively bearing manufacturers serial

numbers P115143, and P115144, and P115141 presently affixed thereto,  one (1) Auxiliary

Power Unit, SN P378, all installed or appurtenant equipment that is normally part of the

Airframe, all equipment that is attached as additional upgrades, and all Aircraft Documents,

(the "AIRCRAFT").

3.   Plaintiff, BIZAV is responsible for the operation and maintenance of the Aircraft.  BIZAV

has a substantial vested financial interest in the Aircraft by virtue of its purchase of the

Aircraft.  When the Aircraft is not operational it fails to generate income, and incurs

expenses on a daily basis.  Additionally, because the Aircraft is not operated daily it causes

the engines and other mechanical systems to deteriorate, and violates the manufacturer's

recommendations and other contracts and regulations.

4.   The Defendant Office of Foreign Assets Control of the Department of the Treasury, (OFAC)

is an agency of the Federal Government operated under the auspices of the Treasury

Department.  The Defendant OFAC administers economic sanctions programs primarily

against countries and groups of individuals, such as terrorists and narcotic traffickers, as well

as measures related to individuals and entities contributing to the situation in Venezuela (The

OFAC Sanction Program) which is implemented by Venezuela Sanctions Regulations

31CFR part 591 and the Reporting, Procedures, and Penalties Regulations, 31 CFR part 51.

The Defendant **STEVEN MNUCHIN**, not in his individual, but in his official capacity as

**SECRETARY OF THE TREASURY** is responsible for the actions of OFAC.  The

Defendant **ANDREA GACKI**, not in her individual, but in her official capacity as Director

of the Office of Foreign Assets Control is also responsible for the actions of OFAC.

Pursuant to 50 USCS Sec 1701-06 et seq (IEEPA—International Emergency Economic

Powers Act, 31 CFR 501 (the economic sanctions enforcement guidelines), and 74 FR

57593-09 (OFAC enforcement guidelines)) the Defendants are responsible for the operation

of OFAC.

5.  This Court has jurisdiction over the parties and the subject matter pursuant to the

Constitution of the United States, and under the Administrative Procedures Act, 5 USC § 701

et. seq., and the following sections of the US Code:

   a.  28 USC § 1331 because District Courts have jurisdiction of all civil actions

       arising under the Constitution, Laws and Treaties of the United States.

b. 28 USC § 1346 (United States as a Defendant) because this is a civil action or

   claim against the United States, …founded either upon the Constitution or any act

   of Congress…; and

c. 28 USC § 1355 titled Fine, Penalty or Forfeiture (a) which provides that a District

   Court shall have original jurisdiction… of any action or proceeding of the

   recovery of any fine, penalty, or forfeiture, pecuniary or otherwise incurred under

   any act of Congress…; and

d. Under 28 USC § 1356 titled Seizures Not Within Admiralty, which provides that

   the District Court shall have jurisdiction… of any seizure under any law of the

   US… and;

e. Under Section 28 USC § 1361 titled Action To Compel An Officer Of The United

   States To Perform His Duty, which provides that the District Courts shall have

   original jurisdiction in the matter of Mandamus to compel an officer or employee

   of any agency thereof to perform its duty.

f. Under Section 28 USC § 2201 which gives the Court the right to declare the

   rights and other legal relations of the Parties.

6. This Court has venue pursuant to 28 US Code Section 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred, and the property that is the subject of this action is situated in the Southern District of Florida.   The Aircraft, i.e. Dessault Mystere Falcon 50 EX, Serial Number 268, Federal Aviation Administration former registration number N133JA now Federal Aviation Administration Number N268TS, is presently and at all times pertinent, has been located at the Aircraft maintenance facility known as "AMATS" at the Opa-Locka Airport located in the City of Opa-Locka, Miami-Dade County, Florida.

## LEGAL BACKGROUND

7. The International Emergency Economic Powers Act 50 U.S.C. § 1701-06 (IEEPA), enacted in 1977, provides the Executive Branch with separate and limited authority to impose sanctions in peacetime, and authorizes the President to declare a national emergency with respect to "any unusual and extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States."  When the President has declared such an emergency, he "may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise...block...,regulate,...nullify, void, prevent or prohibit, any acquisition, holding,

withholding, use, transfer, withdrawal, transportation, importation or exportation of, or

dealing in, or exercising any right, power, or privilege with respect to, or transactions

involving, any property in which any foreign county or a national thereof has any interest, or

with respect to any property, subject to the jurisdiction of the Unites States..."50 U.S.C. §

1702(a)(1)(B).

8.  On March 8, 2015, President Barak Obama issued Executive Order 13692, with regard to the

government of Venezuela, the Maduro Regime, and persons acting for or on behalf of them,

providing at Section 2 of the order, that all property and interests in property are blocked.

President Donald J. Trump issued Executive Order 13808 on August 24, 2017, Executive

Order 13827 on March 19, 2018, Executive Order 13835 on May 21, 2018, and Executive

Order 13850 on November 1, 2018.  All of the Executive Orders issued by President Trump

dealt with the same subject matter with regard to property and investments in property

dealing with Venezuela and Venezuelan Nationals.

9.  31 C.F.R. § 594.204 states that transactions involving property of blocked persons described

under section 594.201 are prohibited.  Under Section C.F.R. § 591, titled Venezuela

Sanctions Regulations, the Treasury Department maintains a "List of specially designated

nationals and blocked persons" (The SDN List).  The list is published so as to provide a

comprehensive current list of individuals and companies owned or controlled by specified

countries or terrorist groups are targeted for sanctions that the public may rely upon.

10. 31 C.F.R. §594.406 states that the "prohibitions on transactions or dealings involving

blocked property contained in sections 594.201 and 594.204 apply to services performed in

the United States or by U.S. persons, wherever located."

11. Section 206 of IEEPA states that a "civil penalty not to exceed $10,000 may be imposed on

any person who violates, or attempts to violate, any license, order, or regulation issued

under" IEEPA, 50 U.S.C. §1705(a), and that "[w]hoever willfully violates, or willfully

attempts to violate, any license, order, or regulation issued under [IEEPA] shall, upon

conviction, be fined not more than $50,000, or, if a natural person, may be imprisoned for not

more than ten years, or both; and any officer, director, or agent of any corporation who

knowingly participates in such violation may be punished by a like fine, imprisonment, or

both." *Id* §1705(b); *see also* 31 C.F.R. §594.701.

## FACTUAL BACKGROUND- THE PURCHASE

12. On December 10, 2018, Falcon50 268 Holdings, Inc., purchased the Aircraft.  In connection

with the purchase:

a. On December 4, 2019, Tom September, an employee of Keystone Law Firm P.A.,

counsel for Plaintiff, conducted an OFAC Sanction List search online to

determine if the parties to/beneficial party in interest of, or the Aircraft appeared

on the OFAC Sanctions List, and determined that based upon said search no

parties to/beneficial party in interest of, or the Aircraft appeared on the OFAC

Sanctions List.  **Exhibit A (Copy of OFAC Sanctions' List) as of December 4,**

**2018.**  The "Risk Assessment" by Plaintiff's attorney is consistent with good

practice – and included as part of the title search and other safeguards in order to

assure Keystone's client, the Plaintiff, that it is not doing business with an OFAC

prohibited person, product, or property.  Plaintiff has exercised due diligence and

is a bona fide purchaser for value that purchased the Aircraft in the ordinary

course of its business.

b. On December 6, 2018, Falcon50 268 Holdings Inc., was incorporated as a single

purpose pass through entity in order to acquire the Aircraft and pass title through

to the ultimate beneficial and legal title holder, the Plaintiff,  BIZAV.

c. On December 7, 2018, Falcon50 268 Holdings, Inc., entered into a contract for

purchase and sale of the Aircraft from Portico Corporation, a Delaware

Corporation. The contract was executed by the Director/President of seller,

attorney Scott Villinueva, of seller on behalf of the seller, Portico Corp., and

Lazaro Manuel Cid Director/President of the purchaser on behalf of Falcon50 268

Holdings, Inc.,. Exhibit B (copy of Purchase Contract).

d. On December 10, 2018 the sale and closing for the purchase of the Aircraft took

place.  Portico Corp sold the Aircraft to Falcon50 268 Holding Inc., for "fair

market value" for One Million Seven Hundred Eighty Thousand Dollars US

(US$1,780,000.00) and title was transferred by virtue of a Warranty Bill of Sale

and an FAA AC Form 8050-2, Aircraft Bill of Sale (Exhibits C & D), which were

filed with the FAA on December 10, 2018.  The title to the Aircraft was then

passed through Falcon50 268 Holdings, Inc and taken in the name of Plaintiff,

BIZAV, via Warranty Bill of Sale (Exhibit E) and FAA AC Form 8050-2, Aircraft

Bill of Sale (Exhibits F), which was filed with the FAA on December 10, 2018.

The filings and title transfers were confirmed via aircraft title search performed by

Aero-Space Reports (Exhibit G)

13. BIZAV is in the business of operating Aircraft for lease and regularly buys and sells aircraft.

In connection with the purchase of this Aircraft, Plaintiff, BIZAV, following the Aviation

Industry's "best practices" to maintain and service the Aircraft and engines, secured an

Aircraft engine maintenance service program for the three Honeywell jet engines that power

the Aircraft (engines P115141, 115143, and 115144). The contract titled "TFE731 Turbo fan

maintenance engine service plan (MSP) contract" (Exhibit H) and is hereafter referred to as

the "MSP" or the "Honeywell Aerospace Aircraft Engine Service Program". Plaintiff

performed the required detailed ongoing scheduled maintenance and inspections according to

the manufacturer's manuals and in compliance with Federal Aviation Administration's

(FAA) Federal Aviation Regulations 's (FAR) regulations for this Aircraft and its engines.

14. On January 2, 2019 The Federal Aviation Administration issued a temporary registration for

the Aircraft in the name of Plaintiff, and separately on January 2, 2019 issued an FAA AC

Form 8050-64 authorizing the use of and placement of tail number to read N268TS on the

Aircraft (Exhibit I).

## "THE SEIZURE"

15. On January 9, 2019 two treasury agents visited AMATS maintenance facility hanger located

in Opa Locka Airport, Florida where the Aircraft is based and maintained. The Treasury

agents advised the maintenance personnel, (AMATS), and Plaintiff, BIZAV, that the Aircraft

was on the OFAC Sanction List published January 8, 2019, pursuant to Executive Order

13850 and updated OFAC's List of Specially Designate National and Blocked Persons, (The

OFAC Sanction List), and the Aircraft was "blocked", and frozen in place, and could not be

accessed or otherwise dealt with without OFAC's approval unless it was removed from the

OSAF Sanction List.

16. In fact, BIZAV had purchased the Aircraft twenty-nine (29) calendar days prior to the

Aircraft appearing on the OFAC Sanction List, and was not the property of any party on the

OFAC Sanctions List.

## PLAINTIFF'S ACTIONS FOR REMOVAL OF THE "BLOCK" AND EFFORTS

## TO SECURE A LICENSE

17. On January 11, 2019 Plaintiff, BIZAV through its counsel, filed a Notice of Compliance

With 31C.F.R.501.603 Report of Blocked Property (EXHIBIT J), which advised the

Treasury Department that the Plaintiff,  BIZAV, and AMATS were in possession of the

Aircraft, providing details of its location, the change in Registration number, its value, how it

was obtained, and detailed contact information.

18. On January 14, 2019 in compliance with 31 C.F.R. 501 and OFAC guidelines published on

www.treasury.gov/resorce-center/sanctions/Page, Plaintiff prepared and filed an Application

for Specific License, requesting that the application be expedited.  The license sought

permission to: "a. Maintain the Aircraft in accordance with the Dassault Falcon 50EX

Maintenance Manual; b. Maintain the Aircraft Engines in accordance with the Honeywell

TFE731 Maintenance Manual; c. Maintain the Aircraft according to all applicable FAR's; d.

Operate under FAR Part 91." (Exhibit K Application of license)

19. On January 16, 2019 the Licensing Division of the US Treasury Department received

   Plaintiff's Application for Specific License and **request to expedite**, including contact

   information, email address in the firm's letter head and supporting evidence, logged in on

   January 29, 2019, Case Number assigned, **Venezuela-2019358924-1**. (Exhibit K).

20. On January 16, 2019, Plaintiff's counsel and maintenance provider AMATS, via counsel's

   email, received a "Third Party Notification of Blocking" letter from Ms. Rosanna Wells,

   Chief of the Enforcement Division of OFAC (Exhibit L). The same day Plaintiff responded

   acknowledging and verifying its intention to comply. (Exhibit M).

21. On January 18, 2019 Keystone Law Firm, as counsel for the Plaintiff BIZAV, per 31 C.F.R.

   501.603 filed a Petition to Unblock Property Appearing on the Sanction List, (the Aircraft),

   which was received by the US Treasury Department on January 29, 2019, (Exhibit N).

22. On February 19, 2019, counsel for the Plaintiff sent a letter and an email to Ms. Rosanna

   Wells, General Counsel of the US Treasury Brent J. McIntosh, and per OFAC guidance, an

email to Reconsideration@treasury.gov. The letter request an expeditious administration of

Plaintiff's Application for Specific License and again brought to the attention of OFAC the

urgency of a license "...in that aircraft has Federal Aviation Administration and

manufacturer's mandatory maintenance schedule both on an hourly operational and calendar

timeline bases to retain its conformity to Aviation Administration FARs and manufacturer's

requirements. (Plaintiff's) inability to perform mandatory prescribed maintenance, operate

systems including the engines in flight will cause the Aircraft to require excessive mandatory

inspections and maintenance to the detriment of the (Plaintiff) and the Aircraft." (Exhibit O)

23. On February 26, 2019 the Defendant(s) acknowledged receipt of Plaintiff's Petition to

Unblock Property Appearing on the Sanctions List, and assigned the petition Case ID #

VENEZUALA-EO13850-15725 (Exhibit P--Copy of Email).

24. On March 8, 2019 Plaintiff was notified by the sales transaction closing and escrow agent

that the funds paid for the Aircraft, which had been transferred weeks before by the escrow

agent from the escrow agent's escrow account to the seller's designated account, had been

frozen and moved into the receiving financial institution's OFAC designated holding account

per order from OFAC. (Exhibit P)

25. Plaintiff through its counsel has acted in a diligent and expeditious manner in compliance with 31 C.F.R. 501 and OFAC guidelines in order to secure a decision on its Application for Specific License and Petition to Remove Blocked Property from the Sanctions List now pending before OFAC, and in so doing has contacted or attempted to contact OFAC staff in excess of 17 times (Exhibit Q).

26. To date, Plaintiff through its counsel has not received any further correspondence from or been contacted through any media by OFAC. Plaintiff has not been able to confirm if OFAC's has taken action, considered granting, or otherwise dealt with its Application for Specific License and the Petition to Remove Blocked Property From the Sanction List pending before it, and it affirmatively appears that there is no government regulation, deadline or rule that requires Defendant(s) to respond to the petition or to grant or deny the license and/or petition, specifically the Application for Specific License to maintain and operate the Aircraft (Exhibit K)

27. The Aircraft engines are maintained under an engine maintenance service program (MSP) administered by Honeywell Aero-Space. On June 27, 2019 Plaintiff BIZAV received communication from Honeywell Aero-Space, MSP contract-supervisor Lora Skiles.  Mrs. Skiles reminded Plaintiff (its customer) that companies incorporated in the US were

prohibited by OFAC from having any transactions related to the Aircraft, and that Plaintiff

needed to work with OFAC to remove the Aircraft from the OFAC Sanction List also known

as the national NSDN list or obtain a specific license to authorize Honeywell Aero-Space to

resume its maintenance and service program under its contract with Plaintiff relating to the

aircraft engines. (Exhibit R)

28. Should Plaintiff lose the benefit of the Honeywell-Aerospace MSP service contract, which

insures its engines, Plaintiff will suffer irreparable harm and an immediate and serious

diminution of the value of the Aircraft, which is estimated by Plaintiff to be in excess of One

Million Dollars (US $1,000,000.00).

29. A license to maintain the Aircraft was and is deemed by Plaintiff to be an urgent matter, and

necessary to preserve the Aircraft and its value.  It is imperative, in order to maintain the

Aircraft's FAA Certificate of Airworthiness and maintain compliance with the FAA's

Federal Aircraft Regulations (FAR) and manufacturer's required maintenance schedule both

on hourly operation and calendar time maintenance programs as well as the mandatory

engine maintenance subscription programs strict compliance required by Honeywell-

Aerospace that the Plaintiff have unrestricted access to and use of the Aircraft.

30. South Florida's climate is characterized by high heat, sand, dust, and high humidity

containing corrosive enablers including sodium phosphate. The effects of not being able to

perform maintenance, conduct inspections, and operate the Aircraft and engines together

with the corrosive properties in the moisture in the air and the area surrounding the Aircraft

are highly detrimental to the aircraft, causing mold and corrosion, including the deterioration

of life limited Aircraft and engine components. The Honeywell-Aerospace Aircraft engine

service program (contract) requires that, at a minimum, the Aircraft's engines be "spun up",

operated per FAA FAR and manufactory's specific requirements and run at all levels

according to the Honeywell-Aerospace engine program specifications in order to ascertain

any potential airworthy discrepancies, perform inspections, and maintenance, and to assure

that the Aircraft and engines are operating above limits and maintained in an airworthy

condition. If the requirements are not strictly followed the Honeywell-Aerospace engine

service program (contract) will be cancelled, the engines will be without insurance, and the

aircraft will be out of compliance with the manufacturer's maintenance program. The final

result will be the loss of the Aircraft's FAA airworthy certificate, resulting in the demise of

the Aircraft, and in such event, the Aircraft and engines will have to be scrapped, and sold for

parts

31. Plaintiff BIZAV justifiably maintains that without assistance from this Honorable Court it may take years for the Defendant, OFAC, to decide Plaintiff's <u>Petition to Remove Blocked Property From the Sanction List</u>, and grant or deny Plaintiff's <u>Application for a Specific License</u> to maintain the Aircraft, resulting in the complete deterioration of the Aircraft, and the Aircraft will become a total loss, a situation which is unconscionable.

## <u>COUNT I – MANDAMUS</u>

32. Plaintiff seeks a Writ of Mandamus to compel OFAC to complete its consideration of the request of license to maintain the aircraft.

33. Plaintiff adopts and incorporates paragraph 1 through 31 as fully set forth.

34. This is an action by Plaintiff against the Defendant(s) for the issuance of a Writ of Mandamus.

35. By virtue of the provisions of 31 C.F.R. 501 the Defendant OFAC has a clear legal duty to consider and to act upon Plaintiff's <u>Application for a Specific License</u> which has been submitted to it.

36. Because the Aircraft is in effect "perishable" it is necessary for and imperative that OFAC act in an expedited, prompt, and diligent manner above and beyond that of non perishable property in order to process the license application.

37. OFAC has failed to act in an expedited, prompt, and diligent manner and has failed to timely respond to the Plaintiff's <u>Application for a Specific License</u> necessary in order to permit the Plaintiff to maintain and operate the aircraft and engines.

38. Plaintiff has no adequate remedy at law other than the bringing of this action. Plaintiff has demanded that the Defendant act and perform its duty with regard to unblocking the aircraft as well as providing a license for maintenance and operation, to no avail. Defendant, OFAC, has a legal duty to act, but it has failed and refuses to do so.

39. The Defendant's failure to act was and is arbitrary, capricious, unlawful, unconstitutional, and contrary to the law, regulations, and due process.

40. Plaintiff will suffer irreparable harm in the absence of relief granted.

41. Once the Aircraft falls out of its maintenance and inspection cycle, it will be prohibitively costly and/or impossible to bring it back into compliance with the manufacturer's specifications, the engine maintenance program requirements, and FAA FAR's airworthy requirements. It may not be possible to secure a new maintenance or insurance program.

42. Because of the extraordinary circumstances outlined above, and because no adequate alternative remedy exists, it is appropriate that the court issue a Writ of Mandamus.

43. All conditions precedent to this lawsuit have been met or occurred or been waived by the

parties.

**WHEREFORE** Plaintiff respectfully prays that the Court will issue a Writ of Mandamus

and compel OFAC and the other Defendants in their representative capacities to immediately

consider and rule upon Plaintiff's <u>Application for a Specific License</u> to operate and maintain the

aircraft; that the Court will grant such other and further relief as it deems just.

## <u>COUNT II – INJUNCTIVE RELIEF</u>

44. This is an action by Plaintiff against the Defendant for an injunction pursuant to Federal Rule

of Civil Procedure 65.

45. Plaintiff adopts and incorporates the foregoing paragraphs 1 through 31 as fully set forth

herein.

46. Plaintiff, BIZAV, is a bona-fide purchaser and has paid fair value for the Aircraft.  Plaintiff

purchased the Aircraft without knowledge and/or notice that the Aircraft was the property of

a person or persons who would be named on the OFAC Sanctions List, and in fact Plaintiff's

counsel verified on repeated occasions prior to Plaintiff's purchase of the Aircraft that the

Aircraft was not on the list.

47. Plaintiff paid $1,780,000.00 for the Aircraft on December 10, 2018, 29 days before the Aircraft and seller was placed on the OFAC Sanctions List.

48. Plaintiff has no adequate remedy at law with regard to serious and urgent need to be able to maintain and operate the aircraft in order to avoid its total loss as referenced in paragraphs 25 and 26 and 28 above.  There is every likelihood that the Defendants will not act in a timely fashion and that their continuing delay will cause the loss of the aircraft.

49. Plaintiff will suffer irreparable harm in the absence of the granting an injunction requiring the Defendants to act expeditiously in the consideration of Plaintiff's applications, and the entry of an order permitting Plaintiff to maintain and operate the aircraft.

**WHEREFORE** Plaintiff respectfully prays that the court will grant an injunction permitting Plaintiff to maintain and operate the Aircraft, and compelling the Defendants to act upon Plaintiff's applications expeditiously.

## COUNT III – ACTION FOR DECLARATORY RELIEF

50. This is an action by Plaintiff against the Defendants for a Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 USC Section 2201-2202 for a Declaration that the statutory provisions that authorize the blocking of Plaintiff's Aircraft fail to afford basic due process and are unconstitutional in fact, and as applied to the Plaintiff.

51. Plaintiff adopts and incorporates the foregoing paragraphs 6 to 31 as though fully set forth herein.

52. The Fifth Amendment to the United States Constitution provides "No matter how just the cause, an individual's property may not be utilized by the government without Due Process and Just Compensation."

53. Defendant OFAC's "block" of Plaintiff's Aircraft and subsequent failure and refusal to unblock the Aircraft and/or to issue a license to permit its maintenance and operation violates the Plaintiff's Fourth Amendment right to be free of unreasonable seizures.

54. Plaintiff is a Florida Corporation.  It is owned by American citizens who reside in South Florida.  It is undisputedly "one of the people" protected by the Constitution.

55. Plaintiff purchased the Aircraft on December 10, 2018, for $1,780,000.00, and exercised due diligence by engaging competent counsel who confirmed that neither the seller nor the Aircraft was on the "SDN List" prior to acquisition of the aircraft and upon completion of the acquisition. Plaintiff was and is a bona-fide purchaser for value without notice of any claims by the United States or any of its agencies.

56. 28 days after Plaintiff purchased the Aircraft the Defendants "blocked" the Aircraft and placed it on the "SDN List". Plaintiff immediately requested that the Aircraft be unblocked and sought a license to maintain and operate the aircraft.

57. The Executive Orders, Federal Regulations, and OFAC procedures in place (see paragraphs 3, 6, 7, 8, 9, and 10 above) fail to afford fundamental due process, including notice and a right to a hearing.

58. The statutory scheme in place is analogous to a situation where you are pronounced guilty and punished unless and until you prove yourself innocent. There are no standards and there are no time limitations or rules which establish when or how a party whose asset is wrongfully blocked is able to unblock the asset. OFAC is the judge, jury, and executioner.

59. Defendant's statutory scheme fails to provide constitutionally protected due process in the following respects:

    a. There is no specific criteria how an entity is designated, or any evidentiary standards to ensure that a designation is proper.

    b. An individual or owner of an asset targeted is not provided notice of a violation, or access to evidence upon which the decision to block the asset is based.

    c. By failing to require a pre-seizure notice.

d.  There are no time constraints – there is no deadline to respond to requests to

unblock the asset.  A party can be forced to wait years until a determination is

made, during which their asset remains frozen.  No deadline exists for completion

of any "investigation" or for ruling on applications before OFAC.

e.  There is no right to confront witnesses or be apprised of evidence, and no

opportunity for administrative review.

f.  There is no means of compelling the government to respond to repeated

correspondence, phone calls, or emails.

g.  While, under 31 CFR Section 501.087, a party may submit to OFAC "arguments

or evidence that the person believes establishes that insufficient basis exists for

the designation," there is no clear process or standards for determining those

issues.  There is no post seizure right to a hearing – only an opportunity to present

evidence when OFAC unilaterally decides.

h.  The procedure utilized is one where the government has no duty to maintain the

asset and the owner of the asset is not permitted to maintain the asset without

government permission, which permits the government to foreseeably return the

asset in a damaged condition.

     i.   While judicial review is provided for, it is not meaningful judicial review because the claimant must wait until final agency action is taken per the Administrative Procedures Act, something that could take months or years.

     j.   The procedure permits a Fifth Amendment deprivation of private property without due process and without just compensation.

     k.   Defendants have "blocked" both the Aircraft, and the sale proceeds, [See Timbs vs Indiana, Supreme Court of the US, Case No. 17-1091, Decided Feb 20, 2019, the Defendant should get two bites at the apple, 5th Amendment]

60. Plaintiff maintains that because the statutory scheme lacks due process that it is a Taking. The plaintiff has been deprived of all economic use of its asset, and may be put out of business.

## **REQUESTED RELIEF**

**WHEREFORE** Plaintiff respectfully prays this court will granted the following relief:

1. The entry of a Writ of Mandamus to compel OFAC and the other Defendants in their representative capacities to immediately consider and rule upon Plaintiff's <u>Application for a Specific License</u> to operate and maintain the aircraft.

2. That the court will grant an injunction permitting Plaintiff to maintain and operate the

   Aircraft.

3. That the Court will grant an injunction compelling the Defendants to act upon Plaintiff's

   applications (for a license to maintain and operate the Aircraft, and to unblock the

   aircraft, and remove it from the SDN list) expeditiously.

4. A Declaratory Judgment declaring that the statutory provisions authorizing the blocking

   of assets without substantive criteria, procedural safeguards, time limits, or judicial

   review, is unconstitutional as violative of the First, Fourth, and Fifth Amendments, both

   on its face and as applied to the Plaintiff.

5. Grant the Plaintiff its costs and attorney's fees under the Equal Access to Justice Act, 28

   USC Section 2412 et. seq., and

6. Grant such other and further relief as Plaintiff may show itself entitled to or that the court

   may deem just and proper

Dated: August ___, 2019

                                                        Keystone Law Firm, P. A.
                                                        12865 West Dixie Highway
                                                        North Miami, FL 33161
                                                        T: 305-899-8588
                                                        F: 305-892-8434

Email: fwolland@wolland.com

By: /s/ Frank Wolland
Frank Wolland, Esquire
FBN#247537

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

### VERIFICATION

Before me, the undersigned authority personally appeared Ben Brown, who is the manager/member of BIZAV AIRCRAFT MANAGEMENT LLC, the Plaintiff herein, who being first duly sworn deposes and states that he has read the factual allegations of the Plaintiff's complaint and the Plaintiff's emergency motion for preliminary injunction and that the facts therein are true.


_____
Ben Brown

Sworn and subscribed before me on August 14ᵗʰ, 2019, by Ben Brown, who did take an oath.


Notary Public, State of Florida

MARIA E GONZALEZ
Notary Public - State of Florida
Commission # GG 049188
My Comm. Expires Dec 5, 2020
Bonded through National Notary Assn.